*Electronically Filed*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:20-CV-00168-JHM

BRANDI MAYER                                                                                    PLAINTIFF,

v.

RURAL KING ADMINISTRATION, INC.

AND

R.K. ADMINISTRATIVE SERVICES, LLC                                              DEFENDANTS.

        **SERVE:** Hon. Kyle Bumgarner
                Kerrick Bachert, PSC
                1025 State Street
                Bowling Green, KY 42101
                Phone: 270-782-8160
                Email: kbumgarner@kerricklaw.com

## AMENDED COMPLAINT

Comes Plaintiff Brandi Mayer ("Plaintiff"), through counsel, and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), states the following first Amended Complaint against Defendants Rural King Administration, Inc. (hereinafter "Inc") and R.K. Administrative Services, LLC (hereinafter "LLC") (collectively, "Defendants").

### JURISDICTION AND VENUE

1. Plaintiff is a resident and domiciliary of the Commonwealth of Kentucky, residing within Hopkins County, Kentucky.

2. At all relevant times herein, Plaintiff was an employee of Inc, LLC, or an unknown third party. Plaintiff performed services as an employee in Madisonville, Hopkins County, Kentucky.

3. At all relevant times, Plaintiff was employed at one physical retail establishment called "Rural King," located at 1650 South Main Street Madisonville, Kentucky 42431.

4. Whenever this Complaint uses the term "Rural King," it means the physical retail establishment located at 1650 South Main Street Madisonville, Kentucky 42431.

5. At all relevant times herein, LLC was a foreign limited liability company, with a principal office in Mattoon, Illinois, with a registered agent in Frankfort, Kentucky, and doing business in locations including Madisonville, Hopkins County, Kentucky.

6. Inc is listed as the manager of LLC on the Kentucky Secretary of State website.

7. Like LLC, Inc has a principal office in Mattoon, Illinois (both specifically at the address 4216 Dewitt Ave with zip code 61938).

8. Inc filed its first annual report with the Kentucky Secretary of State on September 3, 2020.

9. LLC filed its first annual report with the Kentucky Secretary of State on April 10, 2018.

10. All events and omissions giving rise to this Amended Complaint, as well as to Plaintiff's original Complaint, occurred in the Owensboro jury division of Kentucky.

11. The amount in controversy is in excess of seventy-five thousand dollars ($75,000), which satisfies the jurisdictional minimum of this Court.

## BACKGROUND FACTS

12. Plaintiff adopts by reference all preceding and subsequent paragraphs.

13. Plaintiff diligently served Inc or LLC (or some third to be determined entity) in Madisonville, Kentucky as a cashier and then as a Department Manager before rising through the ranks and being promoted to a Harvest Card Representative and earning $14.25 per hour. Inc or LLC (or some third party) employed Plaintiff from October 2018 to July 17, 2020. She started her role in the Harvest Card Representative position in January of 2020.

14. Plaintiff was forty-four (44) years old at the time of all relevant events.

15. She felt pride in her newfound position and excelled in it. Unfortunately, life often presents unprecedented hardships. Not only did the COVID-19 pandemic strike our country, but Ms. Mayer also had a personal and particularly heart wrenching difficulty in her life. One of her daughters, Brooke, had attempted suicide. Brooke's healthcare providers released her into her mother's care for supervision. For this very tragic and sensitive reason, Ms. Mayer had no choice as a mother but to take some time off of work, from a position she otherwise loved.

16. On March 24, 2020, Plaintiff exercised her rights pursuant to the federal Family and Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq*. Specifically, she requested intermittent leave. On or about May 7, 2020, her immediate supervisor, Jay Raymond ("Raymond") remarked, "you left us at the worst time."

17. On or about May 29, 2020, Plaintiff was going about her normal work duties as Harvest Card Representative. She needed to run a customer's card, but unfortunately, Human Resources representative Victoria Newill ("Newill") had physical possession of the necessary tablet, even though Newill could have

performed all of her duties on the computer. Frustrated, Plaintiff confided in another coworker regarding needing the tablet. Newill did not like this and stormed over to Plaintiff's work station, demanding to know if Plaintiff was going to tell Jim Wheatley the District Manager ("Wheatley"), about the situation.

18. On June 4, 2020, Plaintiff received her first written reprimand, or "write up" that she had ever received during her tenure Harvest Card Representative. The write up stated that it was for "associate conflict."

19. Newill did not receive a write up even though she was the one who stormed into Plaintiff's work station and shouted at her. It was Newill who instigated the entire conflict.

20. On or about June 4, 2020, shortly after filing for FMLA, Plaintiff unwittingly and suddenly found herself demoted back to a cashier – a position one step below even her most recent position prior to promotion. Specifically, Raymond demoted her. This demotion was humiliating for Plaintiff, as she had to work alongside much younger employees (mostly sixteen (16) year olds) who should have, and previously did, view her as a superior. She had trouble even showing her face at the Rural King establishment after the demotion and working at her new demeaning station. Raymond confirmed the demotion via email on June 9, 2020, also confirming that Plaintiff would now earn a mere $10.20 per hour (down from $14.25 per hour as Harvest Card Representative). Moreover, Plaintiff would now only work 32-40 hours per week instead of full time.

21. On June 4, 2020, prior to receiving her first written reprimand as Harvest Card Representative (and only second write up during her entire tenure with

Defendant), she had expressed to Raymond a desire for promotion to District Harvest Card Manager. He demoted her four (4) hours later.

22. Plaintiff's FMLA expired on June 27, 2020.

23. On July 17, 2020, Plaintiff arrived to her second shift in her new demoted role. She was unable to complete the shift and cried in her car, resigning the same day.

24. Prior to leaving the premises, Plaintiff documented her resignation on a form called an "Associate Termination Supplement," wherein Newill, who co-signed the form, marked Plaintiff eligible for rehire and Plaintiff wrote, "Could not work 2 [week] notice due to emotional distress regarding demotion from [Harvest Card Manager position]. The same form documented that Plaintiff had already secured a replacement job.

25. On July 20, 2020, Plaintiff began her replacement employment in a temporary position in the healthcare field, which required her to screen patients and staff for COVID-19.

26. Plaintiff alone financially supports one daughter and one grandchild (with a second grandchild on the way).

27. Prior to her demotion, Plaintiff had planned to purchase a decent pre-owned vehicle, as she had been driving a 2006 Minivan with non-functioning air conditioning.

28. Even though she obtained replacement employment after resigning subsequent to the demotion, Plaintiff could not get approved for the necessary car loan because she had not yet worked for her employer for the requisite length of time.

29. Plaintiff has sought mental health counseling due to this ordeal.

30. Unlike Plaintiff, Newill was not on FMLA, nor had she requested FMLA, at or by the time of the May 29 altercation. Accordingly, she did not receive any discipline for the May 29 altercation.

31. Many employees, including Shae Scott ("Scott") were in constant interpersonal conflict and never received any discipline.

32. Within two (2) weeks after her demotion, Plaintiff was replaced as Harvest Card Manager by a woman named Patricia (who often goes by "Trisha") Louise Cole (hereinafter "Cole"), who was under thirty (30) years old at the time of Plaintiff's demotion. Plaintiff was forty-four (44) years old at the time of all relevant events.

33. Plaintiff is the only employee who had occupied the Harvest Card Manager position in that particular store, because the position did not exist until January of 2020.

### COUNT ONE: FMLA RETALIATION AND/OR INTERFERENCE

34. On March 24, 2020, Plaintiff exercised her rights pursuant to the federal Family and Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq*. Specifically, she requested intermittent leave. On or about May 7, 2020, her immediate supervisor, Jay Raymond ("Raymond") remarked, "you left us at the worst time."

35. On June 4, 2020, Plaintiff received a written reprimand and demotion.

36. The written reprimand was for "associate conflict," referring to the altercation with Newill on May 29, 2020. Newill had instigated that altercation.

37. Newill suffered no repercussions for the May 29, 2020 incident – neither a written reprimand nor a demotion.

38. The demotion was two ranks below Plaintiff's existing position as Harvest Card Manager.

39. Plaintiff found the demotion utterly humiliating and unjustified.

40. The reprimand and demotion was demonstrably pretextual, given that Newill had not exercised her rights pursuant to FMLA prior to the May 29 incident. Nor was Newill on FMLA at the time of the incident, whereas Plaintiff was on intermittent FMLA at the time of the May 29 incident.

41. The reprimand and demotion are also clearly pretext because employees such as Scott are constantly involved in interpersonal conflict with impunity.

42. Unlike an FMLA retaliation claim, the Plaintiff need not prove retaliatory motive to demonstrate an FMLA interference claim.

43. Because Plaintiff suffered two adverse employment actions while she was on family and medical leave, she clearly suffered unlawful retaliation or interference with her rights under the FMLA.

44. Plaintiff is entitled damages including back pay, front pay, liquidated damages, costs, and attorney's fees.

### COUNT TWO: AGE DISCRIMINATION PURSUANT TO THE KENTUCKY CIVIL RIGHTS ACT, KRS 344.010 *et seq.*

45. Immediately following her demotion, or perhaps even earlier, Plaintiff found herself replaced by Cole, who was under thirty (30) years old, whereas Plaintiff was forty-four (44) years old at the time of her demotion.

46. Cole is significantly younger than Plaintiff.

47. Plaintiff suffered age discrimination when she was replaced in the Harvest Card Manager position.

48. Additionally, Plaintiff suffered age discrimination when she was demoted following her altercation with Newill, even though Newill initiated the altercation. Newill was thirty-one (31) years old at the time of the May 29, 2020 altercation.

49. Plaintiff performed excellent work in the Harvest Card position, receiving frequent compliments for her work.

50. Plaintiff is entitled to compensatory damages, including for emotional distress, as well as attorney's fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court award:

A. Judgment against Defendants, including compensatory damages, liquidated damages, prejudgment interest, front pay, and backpay, in excess of the minimum jurisdictional amount of this Court, in an amount to be proven at trial;

B. Trial by jury;

C. Plaintiff's costs herein expended including an award of reasonable attorney's fees; and

D. Such other relief to which she may be entitled.

Respectfully Submitted,

MEYMAN LAW PLLC

\s\ H. Gera Meyman, Esq.
P.O. Box 54693
Lexington, KY 40555
Telephone: 859-600-6529
Email:gera@meymanlaw.com
**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

On October 26, 2020, the foregoing was served to the following via the CM/ECF e-filing system:

Hon. Kyle Bumgarner
Kerrick Bachert, PSC
1025 State Street
Bowling Green, KY 42101
Phone: 270-782-8160
Email: kbumgarner@kerricklaw.com